# No. 14-1868

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

––––––––––––––––––––

**UNITED STATES,**
**Appellee,**

v.

**Richard Schwartz,**
**Appellant.**

––––––––––––––––––––

**BRIEF OF APPELLANT**

––––––––––––––––––––

Appeal From The United States District Court
For The District Of Massachusetts
In Criminal Action No. 08-10352

Roberto M. Braceras (No. 68294)
Abigail K. Hemani (No.96206)
Christine Dieter (No. 1165713)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
(617) 570-1000
(617) 523-1231 (Facsimile)

Attorneys for Appellant

# TABLE OF CONTENTS

**Page**

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD ............................ 1

STATEMENT OF JURISDICTION .......................................................... 2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................... 3

STATEMENT OF THE CASE .................................................................. 4

STATEMENT OF FACTS ...................................................................... 5

SUMMARY OF ARGUMENT ................................................................ 19

ARGUMENT ................................................................................. 20

I.      THE GOVERNMENT FAILED TO PROVE BY A
PREPONDERANCE OF THE EVIDENCE THAT MR. SCHWARTZ
VIOLATED ANY CONDITION OF HIS PROBATION. .......................... 20

      A.     The Government Failed To Prove that Mr. Schwartz Violated
the Condition of His Probation that He Must not Commit
Another Federal, State, or Local Crime. .............................. 20

            1.     Mr. Schwartz's Possession of the Wisconsin License
Was Not Criminal under Any Federal, State or Local
Law Because There Was No Evidence of Any Intent To
Defraud ................................................................... 21

            2.     The Government Offered No Evidence To Show that the
Wisconsin License Was Falsely Made. ..................... 24

      B.     The Government Failed To Prove that Mr. Schwartz Violated
the Condition of His Probation that He Answer Truthfully All
Inquiries by His Probation Officer. ..................................... 28

II.     THIS COURT SHOULD REMAND TO THE DISTRICT COURT
FOR RESENTENCING. ............................................................... 29

CONCLUSION ............................................................................... 30

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Commonwealth v. Apalakis*,
    396 Mass. 292, 486 N.E.2d 669 (1985)............................................................25

*Commonwealth v. Kraatz*,
    2 Mass. App. Ct. 196, 310 N.E.2d 368 (1974) ............................................23, 24

*Commonwealth v. Stevens*,
    81 Mass. App. Ct. 1117, 962 N.E.2d 245 (2012) (unpublished)................passim

*Marteney v. United States*,
    216 F.2d 760 (10th Cir. 1954) ........................................................................25

*United States v. Gallo*,
    20 F.3d 7 (1st Cir. 1994)................................................................................20

*United States v. Oquendo-Rivera*,
    586 F.3d 63 (1st Cir. 2009)............................................................................20

*United States v. Pimienta-Redondo*,
    874 F.2d 9 (1st Cir. 1989)..............................................................................30

STATUTES

18 U.S.C. § 371 ..............................................................................................4, 5

18 U.S.C. § 1028(a) .....................................................................................12, 21

18 U.S.C. § 3231 ...............................................................................................2

18 U.S.C. § 3565 ...............................................................................................2

18 U.S.C. § 3742(a) ..........................................................................................2

28 U.S.C. § 1291 ...............................................................................................2

Mass. Gen. Laws ch. 90, § 24(2)(a)....................................................................23

Mass. Gen. Laws ch. 90, § 24B .................................................................passim

Mass. Gen. Laws ch. 266, § 37E(b) ....................................................11, 21

Mass. Gen. Laws ch. 267, § 1 ................................................................25

**OTHER AUTHORITIES**

Fed. R. App. P. 4(b) .................................................................................2

Fed. R. App. P. 25(a) ...............................................................................7

Fed. R. App. P. 34(a) ...............................................................................1

1st Cir. R. 34(a) .......................................................................................1

U.S. Sentencing Guidelines Manual § 7B1.1 (2013)...............................30

Black's Law Dictionary (rev. 4th ed.) .............................................. 23-24

## <u>REASONS WHY ORAL ARGUMENT SHOULD BE HEARD</u>

Pursuant to Federal Rule of Appellate Procedure 34(a) and Local Rule 34(a), Appellant Richard Schwartz respectfully requests oral argument. The District Court improperly interpreted a Massachusetts statute to conclude that Mr. Schwartz's mere possession of an allegedly false driver's license constituted a violation of state law, justifying revocation of his probation. Additionally, the government failed to introduce sufficient evidence to establish that the license at issue was, in fact, falsely made or that Mr. Schwartz lied to the U.S. Probation Office about whether he knew he possessed the license.

Oral argument will assist the Court in addressing these important issues. In particular, this Court will benefit from oral argument on the proper interpretation of Mass. Gen. Laws ch. 90, § 24B, which Massachusetts case law suggests requires an intent to defraud.

## STATEMENT OF JURISDICTION

This is an appeal from a revocation of probation in the United States District Court for the District of Massachusetts pursuant to 18 U.S.C. § 3565. JA226.[1] Mr. Schwartz filed a timely Notice of Appeal on August 15, 2014.  *See* JA230; Fed. R. App. P. 4(b). The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

---

[1]    The Joint Appendix is cited herein as "JA__"; the Supplemental Appendix is cited herein as "SA__".

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.      Did the District Court err in holding that mere possession of an allegedly false driver's license constitutes a violation of Massachusetts law, even if there is no evidence of any intent to defraud?

2.      Did the District Court err in holding that the government established by a preponderance of the evidence that Mr. Schwartz knowingly possessed a false driver's license where the evidence suggested that the license was a sample that Mr. Schwartz had created as part of his job setting up and testing information technology systems used by motor vehicle registries to create identification cards?

3.      Did the District Court err in holding that the government established by a preponderance of the evidence that Mr. Schwartz lied to the U.S. Probation Office when he told his probation officer that he did not know he had the allegedly false license in his wallet on the relevant date and time?

## <u>STATEMENT OF THE CASE</u>

On November 22, 2010, Mr. Schwartz pleaded guilty to one count of conspiracy to commit fraud and misuse of visas in violation of 18 U.S.C. § 371. The District Court (Gertner, J.) concluded that Mr. Schwartz's lack of criminal history and minor role in the conspiracy warranted a downward departure from the recommended Sentencing Guidelines range and sentenced Mr. Schwartz to three years of probation.

On April 16, 2014, just one week before the conclusion of Mr. Schwartz's probation, the U.S. Probation Office ("USPO") filed a Petition for Summons with the District Court, alleging that Mr. Schwartz had violated the conditions of his probation that prohibited him from (1) committing another federal, state, or local crime and (2) failing to answer truthfully all inquiries made by his probation officer.

On August 4, 2014, the District Court held a revocation hearing and concluded that the government had proven both violations. The District Court sentenced Mr. Schwartz to six months imprisonment followed by thirty-six months of supervised release.

## STATEMENT OF FACTS

After completing nearly six years under the supervision of the USPO without incident, Mr. Schwartz, a 56-year-old devoted father of three and caretaker to his ailing 85-year-old father, now faces six months in prison, followed by yet another three years of supervised release. Mr. Schwartz has no prior criminal record and has remained regularly employed throughout his adult life. SA16-18. Unfortunately, in early 2008 Mr. Schwartz became entangled in a scheme hatched by others to assist skilled nonimmigrant workers from India in obtaining H-1B visas. JA33-34, JA73-74. After pleading guilty to one count of conspiracy to commit fraud and misuse of visas under 18 U.S.C. § 371, Mr. Schwartz received a sentence of thirty-six months probation. He began serving this sentence on April 25, 2011. JA83.

In sentencing Mr. Schwartz, Judge Gertner emphasized that she was "troubled by the fact that this was not his scheme." SA38. Mr. Schwartz's co-defendants, all of whom owned private companies that provided computer services, *see* SA4, SA6, devised the scheme when they encountered difficulties obtaining employment letters in support of H-1B visa candidates. JA74. They decided to draft phony letters indicating that the visa candidates were employed by the Commonwealth of Massachusetts, even though they were not. JA73-74. Mr. Schwartz's codefendant Venkat Naidu drafted a form employment letter, which he

provided to codefendant Sridhar Reddy, president of the companies that ultimately submitted the H-1B visa applications. JA74. Mr. Reddy inserted the names of the visa applicants into the form letters and provided Mr. Naidu with a disk containing the completed draft employment letters. JA74.

With the letters fully drafted, Mr. Naidu just needed someone to print and sign the letters on behalf of the Commonwealth of Massachusetts. Mr. Naidu was a consultant and independent contractor for the Commonwealth for many years, and in that capacity he had come to know Mr. Schwartz, who then worked for the Commonwealth's Department of Workforce Development. JA74, SA6-7. Having "no reason not to trust [Naidu]," Mr. Schwartz agreed to print the letters on Commonwealth letterhead and sign on behalf of the Commonwealth. JA74, SA7. As Judge Gertner aptly noted, Mr. Schwartz "was essentially a functionary in [his codefendants'] scheme." SA38. "[H]e certainly didn't gain as much as they stood to gain." SA38. Judge Gertner departed downward from the recommended Sentencing Guidelines range and imposed a sentence of three years of probation. SA40.

By all accounts, Mr. Schwartz's term of probation passed largely without incident. In March 2012, he was transferred to the low-intensity supervision caseload, which indicated that he had thus far complied with the terms of his probation and had generally "done well on supervision." JA119. Low-intensity

6

supervision allowed Mr. Schwartz to "go about [his life] normally with as little interference from the probation office as possible." JA119. And it appears that he did just that. According to the USPO, "[t]hroughout his term of supervision, Mr. Schwartz maintained stable residence and employment, made payment of his special assessment and fine in full, and participated in a psychiatric evaluation as special conditions required." JA97-98. Indeed, even the government represented to the District Court that, until around April 2014, when the events giving rise to this appeal occurred, Mr. Schwartz was "fairly compliant" with the terms of his probation. JA113.

Unfortunately, Mr. Schwartz's conviction took a significant toll on his family and, in particular, his relationship with his wife. His marriage of more than twenty years fell apart, and his wife filed for divorce. Unrepresented in that matter and unable to pay $3,700 in court-mandated attorneys' fees for his now ex-wife's attorney, Mr. Schwartz found himself in contempt of the Middlesex Probate & Family Court. JA207. That court sentenced him to fifteen days in the Middlesex County Jail if he did not pay the $3,700 owed in fees. JA 207.

As ordered, Mr. Schwartz reported to the Middlesex County Jail on March 27, 2014, to serve his contempt citation. Prior to booking, Middlesex County Probation Department ("MCPD") Officer Margaret Fucile received and took inventory of Mr. Schwartz's belongings, including his wallet. JA151. In the wallet,

7

Officer Fucile found two driver's licenses. JA153, JA207-08. [2] One of these, a Massachusetts driver's license, contained Mr. Schwartz's name and personal identifying information. The other, a Wisconsin driver's license, contained the name and personal identifying information, with some alterations, of "John Slack." Both licenses appeared to show Mr. Schwartz's picture. JA208.

Although Officer Fucile testified that she had concerns about the two licenses, both of which appeared legitimate to her, she did not question Mr. Schwartz about them or say anything to Mr. Schwartz to alert him to the fact that he had two licenses in his wallet. JA154, JA160. She also testified that she did not examine either license particularly closely: she could not even remember whether she had turned the licenses over to examine their reverse sides. JA153. Rather, Officer Fucile simply sent a note to the MCPD stating that Mr. Schwartz had possessed two licenses. JA154. It is unclear what happened to the Wisconsin driver's license after the MCPD took possession of it, but the MCPD later told Mr. Schwartz's probation officer that it thought the license may have been returned to Mr. Schwartz with the rest of his belongings upon his release. JA123.

Aware that Mr. Schwartz was on probation, on April 8, 2014, the MCPD notified the USPO that it had discovered the two licenses. JA207. The faxed letter

---

[2]  Because these licenses and other exhibits introduced at the revocation hearing contain personal identifying information, they have been redacted pursuant to Fed. R. App. P. 25(a). At the Court's request, Mr. Schwartz will gladly file unredacted copies of these exhibits under seal.

to the USPO included rough black and white photocopies of the front – but not the back – of each license. JA208. Due to the quality of the photocopies, some of the text, including the signature on the Wisconsin license and any text on and surrounding the licenses' photographs, is largely illegible. JA208. The government has never produced the actual Wisconsin driver's license or even a photocopy of its reverse side.

After receiving the April 8th letter, Mr. Schwartz's probation officer, Erin Hennemann, conducted what she referred to as "minimum research" into the information provided by the MCPD. JA121-22. This "research" consisted solely of (1) running a Registration of Motor Vehicle inquiry on the Wisconsin driver's license, which indicated that the license number on the Wisconsin driver's license was issued to a Mr. John Slack, and (2) locating an obituary for Mr. Slack online, which indicated that he was a retired member of the U.S. Air Force and had passed away on November 11, 2012. JA209-11.

Officer Hennemann also testified to three conversations with Mr. Schwartz about this license, one over the telephone and two in person, the second of which was attended by Officer Hennemann's supervisor, Alicia Howarth. *See infra* at 15-17. She asked Mr. Schwartz whether "he had any knowledge of an identification or a person by the name of John Slack," and Mr. Schwartz denied having any such knowledge. JA123-24, JA149. Officer Hennemann also asked Mr. Schwartz

whether he had possessed a Wisconsin driver's license in the name of John Slack when he reported to the Middlesex Court, and he denied this as well. Mr. Schwartz stated that "*he did not know the contents of his wallet at any given time.*" JA151 (emphasis added).

Officer Hennemann made no effort to establish where the Wisconsin driver's license came from, who created it, or for what purposes it was created. She knew that, throughout his "entire term of supervision," JA134, Mr. Schwartz had worked for companies in the business of establishing information technology systems to allow motor vehicle registries to create identification cards. JA120, JA131. The motor vehicle registries that hired the companies that Mr. Schwartz worked for would provide him with identification cards and licenses to test using the technology systems. JA116. Mr. Schwartz's presentence report ("PSR") indicated that he was "working on a project involving driver's licenses with the Maine Bureau of Motor Vehicles." SA17. And in 2009, the USPO even gave Mr. Schwartz permission to travel to Wisconsin for his work, where he stayed for nearly two months. JA134. At the time of the alleged violations, Officer Hennemann understood that Mr. Schwartz worked for the Safran Company, "which provides IT systems for Registries of Motor Vehicles across the country." JA124, JA128. Despite her knowledge of Mr. Schwartz's work, Officer Hennemann made no attempt to discuss with Mr. Schwartz whether he had

obtained the license in the course of his work, or whether it was created for a legitimate work purpose such as testing the relevant technology systems.

Based on the information provided by the MCPD and Officer Hennemann's three conversations with Mr. Schwartz, on April 18, 2014—a mere seven days before Mr. Schwartz's three-year probation sentence ended—the USPO filed a petition for summons to revoke Mr. Schwartz's probation. JA93-94. The petition alleged that Mr. Schwartz had violated two conditions of his release, specifically, the conditions requiring that (1) "the defendant shall not commit another federal, state or local crime" and (2) "the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." JA93-94. Notably, neither the petition nor the subsequent violation report indicated which federal, state, or local criminal statute Mr. Schwartz allegedly violated. JA93-99. [3]

On August 4, 2014, the District Court held a revocation hearing on the two alleged violations. At the hearing, the government struggled to identify a federal or state statute that Mr. Schwartz allegedly violated by possessing a supposedly false license. The government stated that it believed "the most readily applicable statute" was Mass. Gen. Laws ch. 266, § 37E(b). JA105. Or, it suggested, 18

---

[3] Indeed, as discussed in greater detail below, the District Court could not readily identify the crime that Mr. Schwartz had supposedly committed. JA105 ("Well, it's not 'of course.' It wasn't evident to me when I read this what the alleged violations were, and particularly what the state law is.").

U.S.C. § 1028(a) would "of course" apply. JA105. The government also indicated that Mass. Gen. Laws ch. 90, § 24B *might* apply. JA105.

At the hearing, Officer Hennemann and Officer Fucile both testified on behalf of the government as to the first alleged violation: Mr. Schwartz's alleged violation of the condition that he not commit another federal, state, or local crime. Officer Fucile testified that she had booked Mr. Schwartz into the Middlesex County Jail on March 27, 2014. JA152. She testified that she found the two licenses in Mr. Schwartz's wallet, but her testimony suggests that she did not examine either license closely. Indeed, she had no memory of whether she had even turned the licenses over to examine their backs. JA153. Officer Fucile did not have any conversation with Mr. Schwartz about the licenses. JA154. She simply notified the MCPD that Mr. Schwartz had the two licenses in his wallet. JA154.

Officer Hennemann testified that on April 8, 2014, she received a telephone call and fax from the MCPD notifying her that the two licenses had been found in Mr. Schwartz's wallet on March 27, 2014. JA121, JA207. The fax attached a grainy photocopy of the fronts – but not the backs – of the two licenses. JA208. Officer Hennemann further testified that she later spoke with Officer Fucile, who confirmed that she had found the two licenses. JA123. Officer Hennemann stated that she spoke with the superintendent of the Middlesex County Jail, who indicated

that the MCPD may have (or may not have) returned the Wisconsin license to Mr. Schwartz, along with the rest of his belongings, upon his release. JA123.

Officer Hennemann admitted, both on direct and cross examination, that she knew that Mr. Schwartz had worked with technology used to create driver's licenses throughout his probation. JA120, JA124, JA128, JA131, JA134. The USPO encouraged Mr. Schwartz to maintain employment and never suggested that he could not work in his chosen field. JA133. Officer Hennemann stated that she understood that the technology systems that Mr. Schwartz installed allowed government agencies to create identification cards; Officer Hennemann had no knowledge of whether Mr. Schwartz himself created any such identifications. JA131.

During cross examination, the defense presented Officer Hennemann with five sample and souvenir licenses that Mr. Schwartz had received during the course of his work. JA214-23. Each of these licenses states "Sample" somewhere on it, but the placement and prominence of that notation varies. For example, Exhibit 5B, a Nigerian driver's license, states "Sample" boldly across the back but only in fine print on the front. JA216-17. Exhibit 5E, a Wisconsin driver's license, does not say "Sample" at all and was apparently created for Mr. Schwartz's son, who Officer Hennemann identified as the individual named on the license. JA138, JA222. Officer Hennemann indicated that the picture on the license was not of Mr.

Schwartz's son, and the license contained a pointed restriction that Mr. Schwartz's son "may not operate vehicle if there are girls other than driver's sisters in the vehicle on paved roads." JA138-39, JA223. Officer Hennemann admitted that she was not an expert in Wisconsin licenses and could not identify anything on the face of Exhibit 5E, or the Wisconsin license allegedly found in Mr. Schwartz's wallet, identifying either license as a sample or memento. JA140. Officer Hennemann admitted that she had never seen the back of the Wisconsin license at issue, only the grainy photocopy of the front, and therefore had no idea whether it said "Sample" on the back. JA140. [4]

There was, ultimately, no evidence as to how or why the Wisconsin driver's license allegedly found in Mr. Schwartz's wallet came into existence. The District Court stated that, "It's not clear to me who created it . . . ." JA141. And the entirety of Officer Hennemann's knowledge concerning the license is summed up as follows:

> Q. And you don't know, as the Court and we were all discussing, you don't know who made that license?
> A. No.

---

[4] At the District Court's request, Officer Fucile also looked at all five of the sample licenses provided by the defense. Officer Fucile testified that Exhibit 5D (identified as "5P" in the transcript) did not say "Sample" on either the front or the back. On Exhibit 5B, Officer Fucile noticed only that the license said "Sample" under the picture; she did not notice that it also said "Sample" on the picture itself. JA157. Officer Fucile also failed to notice that Exhibit 5C said "Sample." JA157. In other words, in looking at these sample licenses quickly, just as she had looked at the two licenses during her search of Mr. Schwartz's wallet, Officer Fucile failed to notice the very markers that identified all of these licenses as samples from Mr. Schwartz's work.

> Q. You don't know why that license was made?
>
> A. No.
>
> Q. You don't know if it was made in connection with Mr.
> Schwartz's work, correct?
>
> A. Correct.
>
> Q. And you also don't know how that license found its way into
> Mr. Schwartz's wallet?
>
> A. No.
>
> Q. You don't know who else had access to Mr. Schwartz's
> wallet?
>
> A. No.
>
> Q. And you also have no idea when it was actually put into that
> wallet?
>
> A. No. . . .
>
> Q. There's never any contrary evidence, you don't have any
> evidence to say that Mr. Schwartz actually knew that it was in his
> wallet?
>
> A. No.
>
> Q. And there's no evidence that he ever used it for any
> purpose?
>
> A. No. JA142-43.

Officer Hennemann also admitted that "there's no evidence that Mr. Schwartz tried

to defraud or use that license in any way whatsoever." JA144. And the government

did not offer any evidence to establish that Mr. Schwartz had committed another

federal, state, or local crime.

Officer Hennemann was the government's only witness as to the second

alleged violation, that Mr. Schwartz had failed to comply with the condition of his

probation requiring him to answer truthfully all inquiries by the USPO. She

testified that she initially telephoned Mr. Schwartz sometime between April 8,

2014, and April 15, 2014, to follow up on the information provided by the MCPD.

JA123. She asked Mr. Schwartz whether he had any knowledge of a John Slack, and Mr. Schwartz replied that he did not. JA149. Officer Hennemann then asked Mr. Schwartz whether he had possessed a John Slack identification when he reported to the Middlesex Court, and Mr. Schwartz said that he had not. JA149. Officer Hennemann requested that Mr. Schwartz report to the USPO's offices on April 15, 2014, for a follow-up meeting. JA123. During this meeting, Officer Hennemann again asked Mr. Schwartz "if he had any knowledge of an identification or a person by the name of John Slack," and Mr. Schwartz again stated that he did not have any such knowledge. JA123-24. It is unclear whether she also asked him during this meeting about having a John Slack identification. *Compare* JA124 ("THE COURT: Did you ask him whether he had a Wisconsin license? THE WITNESS: No, I did not, not on that day."), *with* JA149 ("THE COURT: And what questions relating to the Wisconsin driver's license did you ask him when he was there on the 15th? THE WITNESS: The same questions as over the phone, Your Honor.").

Officer Hennemann testified that, following these two interactions, she ordered Mr. Schwartz to report for another meeting, this time with Officer Howarth present. JA125. Mr. Schwartz returned to the USPO on April 16, 2014. JA125. Officers Hennemann and Howarth showed Mr. Schwartz the April 8th letter from the MCPD and the photocopies that the MCPD had provided of the two

16

driver's licenses allegedly found in Mr. Schwartz's wallet. JA126. According to

Officer Hennemann, their questioning of Mr. Schwartz during this meeting

proceeded as follows:

> We asked him if he knew of a John Slack, and he said he did not. We
> asked him if he was in possession of a John Slack ID. He said he was
> not in possession. He stated that it could have been in his wallet; he
> wasn't sure. Howarth asked him whether he knew what was in his
> wallet at any given time. He said *he did not know the contents of his
> wallet at any given time*. JA151 (emphasis added).

On cross examination, Officer Hennemann admitted that she "d[id] not have

knowledge that Mr. Schwartz knew who Mr. Slack was." JA143.

At the conclusion of the hearing, the District Court ruled that the

government had proven that Mr. Schwartz violated both of the relevant conditions

of his probation:  First, the Court found that Mr. Schwartz violated Mass. Gen.

Laws ch. 90, § 24B by knowingly possessing a counterfeit document on March 27,

2014, at the Middlesex Probate Court. JA177. The Court did not even address the

two primary statutes invoked by the government because they both required an

intent to defraud, which the Court did not believe the government could establish.

JA106. Instead, the Court focused on Chapter 90, § 24B, because it believed that

this statute did not similarly require any proof of fraudulent intent. JA106.

According to the District Court, under Chapter 90, § 24B, it was enough that the

license was false, and that Mr. Schwartz "knew he had it." JA179.

Despite the introduction into evidence of numerous other sample licenses that Mr. Schwartz prepared in his line of work, the District Court nonetheless concluded that the Wisconsin license was a fake, rather than a legitimate sample document. The Court concluded that the driver's license allegedly in Mr. Schwartz's possession did not resemble the other sample driver's licenses admitted into evidence. JA179. It also noted that Mr. Schwartz did not have any other sample licenses at the time of his booking, and that he had not mentioned the samples in his initial conversations with the USPO. JA179. Finally, the District Court concluded that Mr. Schwartz's possession "was knowing, that is, he knew he had" the license in his possession. JA179.

Second, the Court found that Mr. Schwartz gave knowingly false answers to material questions from his probation officer. JA177. Specifically, the District Court found that Mr. Schwartz (1) "gave a knowingly false answer to a material question when he told the probation officer on April 15, 2014, that he did not have the Wisconsin license that appeared to be issued in his name in the Middlesex Probate Court on March 27, 2014;" (2) "knowingly gave false answers to related material questions in the telephone call that occurred before April 15 with his probation officer and in the meeting on April 16, 2014;" and (3) "provided knowingly false material information when he said in effect that he had no knowledge of Mr. Slack." JA177. Despite the lack of any direct evidence to prove

that Mr. Schwartz knew who Mr. Slack was, or that he knew that he had a license in that name in his wallet at the Middlesex Probate Court on March 27, 2014, the District Court concluded that the government had proven Mr. Schwartz's statements to be untruthful because Mr. Schwartz had incentive to lie, particularly given that he had only ten days until the expiration of his probation. JA179.

The District Court sentenced Mr. Schwartz to six months imprisonment, followed by a term of thirty-six months supervised release. JA198. Mr. Schwartz timely filed this appeal.

## SUMMARY OF ARGUMENT

In concluding that Mr. Schwartz had violated the conditions of his probation, the District Court committed several reversible errors.

First, the District Court erred in interpreting Mass. Gen. Laws ch. 90, § 24B to require nothing more than *possession* of a falsely made document. Instead, Massachusetts cases interpreting Chapter 90, § 24B make clear that Chapter 90, § 24B, like other statutes addressing possession of fraudulent documents, *see infra* pp. 21-25, requires an intent to defraud. *See infra* pp. 22-24.

Second, even if the District Court had properly interpreted Chapter 90, § 24B, the government offered insufficient evidence to establish the alleged probation violations. The government did not prove that the driver's license at issue was "falsely made" or that Mr. Schwartz lied to the USPO when he said that

he did not know Mr. Slack and that he did not know whether the license had been in his wallet. *See infra* pp. 25-29.

## ARGUMENT

## I.   THE GOVERNMENT FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT MR. SCHWARTZ VIOLATED ANY CONDITION OF HIS PROBATION.

Before probation may be revoked, the government must prove by a preponderance of reliable evidence that the defendant committed a violation of the conditions of his probation. *United States v. Oquendo-Rivera*, 586 F.3d 63, 66 (1st Cir. 2009); *United States v. Gallo*, 20 F.3d 7, 14 (1st Cir. 1994). Only after making such a finding may the District Court decide, in its discretion, to revoke probation. *Oquendo-Rivera*, 586 F.3d at 66-67.

This Court reviews the District Court's underlying factual findings supporting the finding of a violation for clear error, *Oquendo-Rivera*, 586 F.3d at 67, but any determinations of applicable law are reviewed *de novo*. *Gallo*, 20 F.3d at 11. If the District Court finds a violation, the decision to revoke probation is reviewed for abuse of discretion. *Id.* at 13.

### A.   The Government Failed To Prove that Mr. Schwartz Violated the Condition of His Probation that He Must not Commit Another Federal, State, or Local Crime.

For two separate reasons, the government did not prove that Mr. Schwartz's possession of the Wisconsin license violated any federal, state, or local criminal law.  First, the government failed to offer any evidence of an intent to defraud—a

required showing under all of the statutes that it cited, including the Massachusetts statute on which the District Court ultimately relied, Mass. Gen. Laws Chapter 90, § 24B. Indeed, in *Commonwealth v. Stevens*, 81 Mass. App. Ct. 1117, 962 N.E.2d 245 (2012) (unpublished), the Massachusetts Appeals Court made clear that precisely such proof of scienter is required to establish a violation of this provision. Second, even if Chapter 90, § 24B, did not require an intent to defraud, the evidence still would fail to demonstrate that Mr. Schwartz's possession of the Wisconsin license was criminal because the government offered no evidence that the Wisconsin license was "falsely made."

> 1. Mr. Schwartz's Possession of the Wisconsin License Was Not Criminal under Any Federal, State or Local Law Because There Was No Evidence of Any Intent To Defraud.

No applicable federal, state, or local law criminalizes the mere possession of a fake license. The two primary statutes cited by the government, Mass. Gen. Laws ch. 266, § 37E(b) and 18 U.S.C. § 1028(a), unquestionably require an intent to defraud. *See* 18 U.S.C. § 1028(a) ("knowingly possesses an identification document . . . with the intent such document or feature be used to defraud the United States"); Mass. Gen. Laws ch. 266, § 37E(b) ("Whoever, with intent to defraud, poses as another person . . . ."). But, as Officer Hennemann admitted, there was "no evidence that Mr. Schwartz tried to defraud or use [the Wisconsin] license in any way whatsoever." JA144. And the District Court did not make any

21

finding that Mr. Schwartz had intended to use the license—for fraud or otherwise. Rather, it found only that Mr. Schwartz had possessed the license. JA177, JA202. Consequently, the evidence failed to demonstrate that Mr. Schwartz violated either of the two statutes primarily relied upon by the government.

Nonetheless, the District Court held that Mr. Schwartz's possession of the Wisconsin license constituted a crime under state law.  The Court cited to Mass. Gen. Laws Chapter 90, § 24B, a provision found in the "Administration of the Government" section of the Massachusetts General Laws, titled, "Stealing, forging or other falsification of learner's permit, operator's license, disability placard certification of registration or inspection sticker; use or possession; penalties, suspension and reinstatement of license or right to operate motor vehicle." Mass. Gen. Laws ch. 90, § 24B. Buried in its text, this statute states in relevant part:

> Whoever has in his possession, or utters, publishes as true or in any way makes use of a falsely made, stolen, altered, forged or counterfeited learner's permit, license to operate motor vehicles, . . . shall be punished by a fine of not more than five hundred dollars or by imprisonment in the state prison for not more than five years or in jail or house of correction for not more than two years.

Mass. Gen. Laws ch. 90, § 24B.[5]

Two Massachusetts Appeals Court decisions make clear that this statute also requires proof of an intent to defraud.  First, in *Commonwealth v. Stevens*, the

---

[5]    The full text of the statute is included in the Defendant's Addendum ("Add.__") to this brief at Add. 5.

defendant challenged a jury instruction that resulted in his conviction of falsely

applying for a motor vehicle license in violation of Chapter 90, § 24B. 81 Mass.

App. Ct. 1117, 962 N.E.2d 245 (2012) (unpublished). The Appeals Court

concluded that the trial court "created a substantial risk of a miscarriage of justice"

when it instructed the members of the jury that "they could convict the defendant

simply if they found he possessed a driver's license that was not genuine, with no

mention of the requirement that the defendant knowingly made a false statement to

obtain it." *Id.* at *3. To require the Commonwealth to prove only that the defendant

possessed the license and that the license was not genuine would have

"substantially reduced the Commonwealth's burden of proof." *Id.*

The Appeals Court relied in part on *Commonwealth v. Kraatz*, 2 Mass. App.

Ct. 196, 310 N.E.2d 368 (1974), an earlier Appeals Court decision addressing a

conviction for making false statements in a driver's license application in violation

of the then-enacted Mass. Gen. Laws ch. 90, § 24(2)(a). After tracing the

legislative history of the statute back to 1913, the Appeals Court concluded that the

statute "implies scienter and that guilty knowledge is an essential element of the

offense." *Id.* at 202. In reaching this conclusion, the Appeals Court joined a line of

cases citing Black's Law Dictionary with approval for the proposition that "(i)n

law ('false') usually means something more than untrue; it means something

*designedly untrue and deceitful*, and implies *an intention to perpetrate some*

23

*treachery or fraud.*" *Id.* (quoting Black's Law Dictionary 722 (rev. 4th ed.))
(emphasis added). *Stevens* incorporated this understanding of "false" into its
holding. *Stevens*, 81 Mass. App. Ct. at *3, 962 N.E.2d 245. For this reason, the
Appeals Court in *Stevens* concluded that a jury instruction allowing the members
of the jury to convict "simply if they found [the defendant] possessed a driver's
license that was not genuine" risked creating a substantial miscarriage of justice.
*Id*.

Here, the District Court made precisely the same error as the trial court in
*Stevens*. The District Court found Mr. Schwartz in violation of Chapter 90, § 24B
based solely on his possession of an allegedly false driver's license. The District
Court found that Mr. Schwartz's possession of the license "was knowing" simply
because, in the District Court's opinion, Mr. Schwartz "knew he had it." JA179.
But the District Court made *no finding* that Mr. Schwartz intended to use the
license to perpetrate a fraud or for any other illicit purpose. Accordingly, the
District Court erred as a matter of law in finding that Mr. Schwartz had violated
Chapter 90, § 24B.

**2.** The Government Offered No Evidence To Show that the
Wisconsin License Was Falsely Made.

Even if Chapter 90, § 24B, did not require an intent to defraud, the evidence
still would fail to demonstrate that Mr. Schwartz's possession of the Wisconsin
license violated this provision because the government offered no evidence that the

Wisconsin license was "falsely made." [6]  Under Massachusetts law, "falsely made"

means "forged." *Commonwealth v. Apalakis*, 396 Mass. 292, 298-99, 486 N.E.2d

669, 673 (1985). [7] The term "falsely made" goes to the genuineness in a

document's creation, rather than the accuracy of the information contained in that

document or the intentions of any subsequent possessor of the document. The

Massachusetts Supreme Judicial Court has adopted the following language of the

U.S. Court of Appeals for the Tenth Circuit in describing the term "falsely made":

> As used in criminal statutes, the words "falsely made" and "forged"
> are homogeneous, partaking of each other. They have always been
> synonymously construed to describe a spurious or fictitious making as
> distinguished from a false or fraudulent statement. The words *relate to
> the genuineness of execution and not falsity of content*.

*Id.* at 299, 486 N.E.2d 669 (quoting *Marteney v. United States*, 216 F.2d 760, 763

(10th Cir. 1954)) (emphasis added). It is not the content of the document that

establishes whether it was falsely made, but rather the process of its creation.

---

[6]    Although Chapter 90, § 24B also prohibits possession of a "counterfeit"
license, the District Court acknowledged that it had not researched the
definition of "counterfeit" under Massachusetts law and instead applied the law
of this circuit to conclude that "counterfeit" could mean either falsely made or
resembling sufficiently a real card that it could deceive an honest, intelligent
person who is unsuspecting concerning it. JA178. But, as explained below, the
latter definition is inconsistent with Massachusetts law, and the District Court
should not have relied on it. *See Commonwealth v. Apalakis*, 396 Mass. 292,
296-99, 486 N.E.2d 669, 671-73 (1985) (rejecting Commonwealth's argument
that the phrase "falsely makes, alters, forges, or counterfeits" establishes four
alternative bases for liability).

[7]    In *Commonwealth v. Apalakis*, the Massachusetts Supreme Judicial Court was
interpreting language in Mass. Gen. Laws ch. 267, § 1 that is practically
identical to the relevant language in Mass. Gen. Laws ch. 90, § 24B. *See* Add.
14.

At the hearing, the government offered absolutely no evidence to show how or by whom the Wisconsin license allegedly found in Mr. Schwartz's wallet was created. Officer Hennemann admitted that she did not know who had made the license or why. JA142. She admitted that she did not know whether the license had been made as part of Mr. Schwartz's work. JA142. And no one disputed that Mr. Schwartz's work involved technology for creating and testing driver's licenses. JA120, JA124, JA128, JA131, JA133-34. Despite the fact that Officer Hennemann and the USPO had known for years about Mr. Schwartz's work, Officer Hennemann's "research" into the alleged offenses did not involve any effort to establish who created the license, whether that person had permission to do so, or whether the license was intended as a sample or created as part of a test of the systems that Mr. Schwartz's company helped to design and install.

Instead, the only evidence directly addressing whether the Wisconsin license was "falsely made" were the five sample licenses introduced by the defense that Mr. Schwartz had obtained during the course of his work. These sample licenses in Exhibit 5 resemble, as best as can be determined, the license allegedly found in Mr. Schwartz's possession. JA214-23. Although each of the licenses in Exhibit 5 indicated in some way that it was a "sample," the placement and obviousness of that designation varies. For example, the reverse side of Exhibit 5B states "Sample" in bold lettering, but the front of the license says "Sample" only in small

print on the photograph and in the signature. JA216-17. If these two items were

obscured, the front of the license would provide no indication that it was not an

actual driver's license.

The government never produced the actual license allegedly found on Mr.

Schwartz. Instead, it produced a fax of a photocopy. JA121, JA208. And, for

several reasons, the fax of the photocopy provided by the MCPD is not sufficiently

reliable in its rendering of the original license to establish that the license was not a

sample. First, the MCPD did not provide a photocopy of the reverse side of the

license, and Officer Fucile could not recall whether she even looked at the reverse

side. JA153, JA207-08. Accordingly, there is no way to know whether or not the

Wisconsin driver's license said "SAMPLE" across the back, as in Exhibit 5B.

Second, the grainy rendering of the front of the license makes certain text illegible.

The signature is cut off, and it is impossible to tell whether the text surrounding or

on the photograph says "Sample."  Rather than conduct an actual investigation into

the origins of the license, the government relied on a poorly made photocopy of

only the front side of the license to establish that it was falsely made. This partial

photocopy does not satisfy even the more relaxed standard of proof required for

revocation.

**B.      The Government Failed To Prove that Mr. Schwartz Violated the Condition of His Probation that He Answer Truthfully All Inquiries by His Probation Officer.**

The government also failed to establish by a preponderance of the evidence that Mr. Schwartz did not answer the inquiries of the USPO truthfully. The District Court concluded that Mr. Schwartz gave knowingly false information because he told the USPO that he did not have the Wisconsin license with him in Probate Court on March 27, 2014, and that he did not know Mr. Slack.  But the District Court pointed to no evidence to support this conclusion. Nor could the Court have done so, because the evidence presented at the revocation hearing established just the opposite.

First, the government offered no evidence that Mr. Schwartz actually did know Mr. Slack. To the contrary, Officer Hennemann testified that she "d[id] not have knowledge that Mr. Schwartz knew who Mr. Slack was." JA143. She had never heard Mr. Schwartz talk about Mr. Slack. JA143. And, while doing her "minimum research" into the driver's license, she did not even attempt to find, let alone actually find, any connection between Mr. Schwartz and Mr. Slack. JA122. The only evidence on the record, therefore, was that *the USPO had no information suggesting that Mr. Schwartz knew who Mr. Slack was.* So when Mr. Schwartz repeatedly told the USPO that he did not know who Mr. Slack was, it appears, based on the record, that he told the USPO the truth.

28

Second, the government failed to offer sufficient evidence that Mr. Schwartz lied when he told the USPO that he did not have a Wisconsin license in the name of John Slack with him in Probate Court on March 27, 2014. Officer Hennemann testified most clearly regarding her third conversation with Mr. Schwartz, the one at which her supervisor also was present. During that meeting, Mr. Schwartz made clear that "he did not know the contents of his wallet at any given time." JA151. "He stated that it could have been in his wallet; he wasn't sure." JA151. In other words, Mr. Schwartz lacked the knowledge necessary to answer the USPO's questions. The Wisconsin license could have been in his wallet or it might not have been, and Mr. Schwartz would not have known either way. JA151. Mr. Schwartz cannot have lied to the USPO about something that he admitted he did not know.[8] Consequently, the government failed to establish that Mr. Schwartz answered his probation officer's questions untruthfully.

## II.      THIS COURT SHOULD REMAND TO THE DISTRICT COURT FOR RESENTENCING.

This Court should vacate the District Court's judgment in its entirety and order the District Court to terminate Mr. Schwartz's probation immediately. But even if this Court vacates only one of the two violations identified by the District Court, it should still remand to the District Court for resentencing. As this Court

---

[8]      It also makes sense that Mr. Schwartz, who regularly worked with sample licenses, would not have paid attention to or have known what name appeared

has made clear, "[w]hen the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains . . . in order to ensure that the punishment still fits both crime and criminal." *United States v. Pimienta-Redondo*, 874 F.2d 9, 14 (1st Cir. 1989). This is especially true where, as here, the two alleged violations fall into different categories of severity. *See* U.S. Sentencing Guidelines Manual § 7B1.1 (2013) (listing the violation for committing another crime as a Grade B violation and the violation for failing to respond truthfully to a probation officer as a Grade C violation). If this Court holds that the government failed to prove that Mr. Schwartz committed any further crime and vacates the Grade B violation, then the only remaining violation—a first-time Grade C violation for failing to respond truthfully to a probation officer—could not possibly justify a sentence of six months in prison and three years of supervised release.

## **CONCLUSION**

For the foregoing reasons, Mr. Schwartz respectfully requests that this Court reverse the District Court's holding and vacate the judgment of violations.

---

on the samples, or whether he happened to be carrying any of those samples with him at any given moment in time.

Respectfully submitted,

RICHARD SCHWARTZ

By his attorneys,


/s/ *Abigail K. Hemani*
Roberto M. Braceras (No. 68294)
Abigail K. Hemani (No. 96206)
Christine Dieter (No. 1165713)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
Tel.: (617) 570-1000
Fax: (617) 523-1231
rbraceras@goodwinprocter.com
ahemani@goodwinprocter.com
cdieter@goodwinprocter.com

Dated: November 5, 2014

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, Abigail K. Hemani, counsel for Richard Schwartz, hereby

certifies pursuant to Fed. R. App.  P. 32(a)(7)(C) that the Brief for Appellant

complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B).

According to the word count of Microsoft Word, the word-processing system used

to prepare the brief, the brief contains 7,055 words.

/s/ *Abigail K. Hemani*
Abigail K. Hemani (No. 96206)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Dated: November 5, 2014

## CERTIFICATE OF SERVICE

I, Abigail K. Hemani, hereby certify that on the 5th day of November, 2014, I served true copies of the foregoing Appellant's Brief and accompanying Appendices on the following parties by U.S. Mail.  I further certify that I electronically filed the foregoing Appellants' Brief with the United States Court of Appeals for the First Circuit by using the CM/ECF system.  I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served a true copy of the Appellant's Brief by the CM/ECF system:

Dina Michael Chaitowitz, Esq.          Eugenia Carris, Esq.
U.S. Attorney's Office                 U.S. Attorney's Office
John Joseph Moakley Courthouse         John Joseph Moakley Courthouse
1 Courthouse Way                       1 Courthouse Way
Boston, MA 02210                       Boston, MA 02210



                                       /s/ *Abigail K. Hemani*
                                       Abigail K. Hemani
Dated: November 5, 2014

# No. 14-1868

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————————

**UNITED STATES,**
**Appellee,**

v.

**Richard Schwartz,**
**Appellant.**

———————————

**ADDENDUM TO THE BRIEF OF APPELLANT RICHARD SCHWARTZ**

———————————

Appeal From The United States District Court
For The District Of Massachusetts
In Criminal Action No. 08-10352

Roberto M. Braceras (1st Cir. No. 68294)
Abigail Hemani (1st Cir. No. 96206)
Christine Dieter (1st Cir. No. 1165713)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
(617) 570-1000
(617) 523-1231 (Facsimile)

Attorneys for Appellant

# <u>TABLE OF CONTENTS</u>

<u>**Description**</u>                                                                                         <u>**Page**</u>

August 4, 2014 – Judgment in a Criminal Case...................................................................ADD - 1

Massachusetts General Laws Chapter 90, Section 24B.........................................................ADD - 5

18 U.S. Code §1028.............................................................................................................ADD - 7

Massachusetts General Laws Chapter 266, Section 37E....................................................ADD - 12

Massachusetts General Laws Chapter 267, Section 1 .......................................................ADD - 14

AO 245D (Rev 3/01)  Sheet 1 - Judgment in a Criminal Case for Revocations - D Massachusetts (09/02)

# United States District Court
## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>**Richard Schwartz** | **JUDGMENT IN A CRIMINAL CASE**<br>(For **Revocation** of Probation or Supervised Release)<br>(For Offenses Committed On or After November 1, 1987)<br><br>Case Number: **1: 08 CR 10352  - 004 - MLW**<br><br>Roberto Braceras<br>Defendant's Attorney |

Date of Original Judgment:          6/10/2011

## THE DEFENDANT:

☐ admitted guilt to violation of condition(s) _____ of the term of supervision.

☒ was found in violation of condition(s) I and II _____ after denial of guilt.

Accordingly, the court has adjudicated that the defendant is guilty of the following violation(s):

| Violation Number | Nature of Violation | Date Violation Concluded |
|---|---|---|
| I | The defendant shall not commit another federal, state or local crime | 03/27/14 |
| II | The defendant shall answer all inquiries by the probation officer and follow the instructions of the probation officer | 03/27/14 |

☐ See continuation page

The defendant is sentenced as provided in pages 2 through 4 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has not violated condition(s) _____ and
is discharged as to such violation(s) condition.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district with 30 days of any change of name, residence, or maling address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

|  |  |
|---|---|
| | 08/04/14 |
| Defendant's Soc  Sec. No.:  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 | Date of Imposition of Judgment |
| Defendant's Date of Birth: 00/00/1958 | |
| Defendant's USM No.: 27189-038 | Signature of Judicial Officer |
| Defendant's Residence Address: | The Honorable Mark L. Wolf |
| Lexington, MA | Senior Judge, U.S. District Court |
| | Name & Title of Judicial Officer |
| Defendant's Mailing Address: | |
| Same as above | Auqust  14, 2014 |
| | Date |

AO 240D (Rev. 3/01) Judgment in a Criminal Case for Revocations: Sheet 2 - Imprisonment

| CASE NUMBER: | **1: 08 CR 10352 - 004 - MLW** | Judgment - Page 2 of 4 |
| DEFENDANT: | **Richard Schwartz** | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of    **6 month(s)**

☐   The court makes the following recommendations to the Bureau of Prisons:

☐   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district.
    ☐ at _____ on _____
    ☐ as notified by the United States Marshal.

☒   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
    ☒ before _12:00 pm_ on _9/15/14____
    ☐ as notified by the United States Marshal.
    ☐ as notified by the Probation or Pretrial Services Officer.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

UNITED STATES MARSHAL

By _____
Deputy U.S. Marshal

AO 245D (Rev. 3/01) Sheet 3 - Supervised Release

CASE NUMBER: **1: 08 CR 10352  - 004 - MLW**         Judgment - Page 3 of 4
DEFENDANT: **Richard Schwartz**

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of    36 month(s)

x See continuation page

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check if applicable.)

☒ The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page (if indicated above).

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependants and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Continuation Page - Supervised Release/Probation

| CASE NUMBER: | 1: 08 CR 10352 - 004 - MLW | Judgment - Page 4 of 4 |
| DEFENDANT: | Richard Schwartz | |

## Continuation of Conditions of ☒ Supervised Release ☐ Probation

1) The defendant is prohibited from possessing a firearm or other dangerous weapon;

2) The defendant is to provide the probation officer access to any requested financial information, which may be shared with the Financial Litigation Unit of the U.S. Attorney's Office;

3) The defendant is to participate in a mental health program as directed by the United States Probation Office. The defendant shall be required to contribute to the costs of services for such treatment based on the ability to pay or availability of third party payment;

4) The defendant is prohibited from engaging in an occupation, business or profession, contractual or otherwise, that would require or allow access to the personal identifiers of any other individual. The defendant is to provide the probation officer with any requested employment documentation. Probations shall inform any employer or potential employer if it believes there may be a risk of your working in that position.

5) The defendant shall use his true name and is prohibited from the use of any aliases, false dates of birth, false social security numbers, incorrect places of birth, and any other pertinent incorrect identifying information;

6) The defendant is to undergo a psychiatric evaluation and is to participate in a mental health treatment as directed by the Probation Office. The defendant shall be required to contribute to the costs of services for such treatment based on the ability to pay or availability of third-party payment.

7) The defendant is specifically instructed to execute any release forms that may be required to authorize disclosure of the psychiatric evaluation to the Probation Office and to permit the treatment provider to verify the defendant's compliance with any treatment plan implemented.

8) The defendant is to pay the balance of the fine according to a court-ordered repayment schedule.

9) The defendant is prohibited from incurring new credit charges or opening additional lines of credit without the approval of the Probation Office while any financial obligations remain outstanding.

The 188TH General Court of
THE COMMONWEALTH OF MASSACHUSETTS

| Massachusetts Laws | Bills | State Budget | People | Committees | Educate & Engage | Events | MyLegislature |

**Massachusetts Laws**

- Massachusetts Constitution
- General Laws
- Session Laws
- Rules

## General Laws

Print Page

| PART I | ADMINISTRATION OF THE GOVERNMENT | |
|---|---|---|
| | | NEXT |

| TITLE XIV | PUBLIC WAYS AND WORKS | | |
|---|---|---|---|
| | | PREV | NEXT |

| CHAPTER 90 | MOTOR VEHICLES AND AIRCRAFT | | |
|---|---|---|---|
| | | PREV | NEXT |

| Section 24B | Stealing, forging or other falsification of learner's permit, operator's license, disability placard certificate of registration or inspection sticker; use or possession; penalties; suspension and reinstatement of license or right to operate motor vehicle | | |
|---|---|---|---|
| | | PREV | NEXT |

Section 24B. Whoever falsely makes, steals, alters, forges or counterfeits or procures or assists another to falsely make, steal, alter, forge or counterfeit a learner's permit, a license to operate motor vehicles, an identification card issued under section eight E, a special parking identification disability placard, a certificate of registration of a motor vehicle or trailer, or an inspection sticker, or whoever forges or without authority uses the signature, facsimile of the signature, or validating signature stamp of the registrar or deputy registrar upon a genuine, stolen or falsely made, altered, forged or counterfeited learner's permit, license to operate motor vehicles, certificate of registration of a motor vehicle or trailer or inspection sticker, or whoever has in his possession, or utters, publishes as true or in any way makes use of a falsely made, stolen, altered, forged or counterfeited learner's permit, license to operate motor vehicles, an identification card issued under section eight E, a special parking identification disability placard, certificate of registration of a motor vehicle or trailer or inspection sticker, and whoever has in his possession, or utters, publishes as true, or in any way makes use of a falsely made, stolen, altered, forged or counterfeited learner's permit, license to operate motor vehicles, certificate of registration of a motor vehicle or trailer or inspection sticker, and whoever has in his possession, or utters, publishes as true, or in any way makes use of a falsely made, stolen, altered, forged or counterfeited signature, facsimile of the signature or validating signature stamp of the registrar or deputy registrar, shall be punished by a fine of not more than five hundred dollars or by imprisonment in the state prison for not more than five years or in jail or house of correction for not more than two years.

Whoever falsely makes, steals, forges or counterfeits a learner's permit, a license to operate motor vehicles or an identification card issued under section 8E with the intent to distribute such learner's permit, license to operate motor vehicles or identification card shall be punished as follows: (i) for acts involving any combination of 5 or fewer learner's permits, licenses to operate or identification cards, by a fine of not more than $500 or by imprisonment in the house of correction for not more than 1 year, or both such fine and imprisonment; (ii) for acts

**ADD -5-**

Case: 14-1868     Document: 00116761074     Page: 45     Date Filed: 11/06/2014     Entry ID: 5865139

involving 6 to 10 such documents, by a fine of not more than $1,000 or by imprisonment in the state prison for not more than 5 years or in the house of correction for not more than 2 1/2 years, or both such fine and imprisonment; (iii) for acts involving more than 10 such documents, by a fine of not more than $10,000 or by imprisonment in the state prison for not more than 10 years, or both such fine and imprisonment.

Whoever falsely impersonates the person named in an application for a license or learner's permit to operate motor vehicles, or procures or assists another to falsely impersonate the person named in such an application whether of himself or another, or uses a name other than his own to falsely obtain such a license or whoever has in his possession, or utters, publishes as true, or in any way makes use of a license or learner's permit to operate motor vehicles that was obtained in such a manner shall be punished by a fine of not more than five hundred dollars or by imprisonment in the state prison for not more than five years or in a jail or house of correction for not more than two years.

A conviction of a violation of this section shall be reported forthwith by the court or magistrate to the registrar who shall suspend immediately the license or right to operate of the person so convicted, and no appeal, motion for new trial or exceptions shall operate to stay the suspension of the license or right to operate. The registrar after having suspended the license or right to operate in accordance with this paragraph shall not terminate such suspension nor reinstate the right to operate to such person until one year after the date of suspension following said conviction; provided, however, that if the prosecution against such person has terminated in his favor, the registrar shall forthwith reinstate his license or right to operate.

Show / Hide Site Map

**ADD -6-**

# 18 U.S. Code § 1028 - Fraud and related activity in connection with identification documents, authentication features, and information

Current through Pub. L. 113-185. (See Public Laws for the current Congress.)

**US Code**     **Notes**

prev | next

**(a)** Whoever, in a circumstance described in subsection (c) of this section—

**(1)** knowingly and without lawful authority produces an identification document, authentication feature, or a false identification document;

**(2)** knowingly transfers an identification document, authentication feature, or a false identification document knowing that such document or feature was stolen or produced without lawful authority;

**(3)** knowingly possesses with intent to use unlawfully or transfer unlawfully five or more identification documents (other than those issued lawfully for the use of the possessor), authentication features, or false identification documents;

**(4)** knowingly possesses an identification document (other than one issued lawfully for the use of the possessor), authentication feature, or a false identification document, with the intent such document or feature be used to defraud the United States;

**(5)** knowingly produces, transfers, or possesses a document-making implement or authentication feature with the intent such document-making implement or authentication feature will be used in the production of a false identification document or another document-making implement or authentication feature which will be so used;

**(6)** knowingly possesses an identification document or authentication feature that is or appears to be an identification document or authentication feature of the United States or a sponsoring entity of an event designated as a special event of national significance which is stolen or produced without lawful authority knowing that such document or feature was stolen or produced without such authority;

**(7)** knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law; or

**(8)** knowingly traffics in false or actual authentication features for use in false identification documents, document-making implements, or means of identification;

shall be punished as provided in subsection (b) of this section.

**(b)** The punishment for an offense under subsection (a) of this section is—

**ADD -7-**

Case: 18-1868 § 1028   Document: 00116701074   Page: 47   Date Filed: 11/06/2014   Entry ID: 5869139

**(1)** except as provided in paragraphs (3) and (4), a fine under this title or imprisonment for not more than 15 years, or both, if the offense is—

**(A)** the production or transfer of an identification document, authentication feature, or false identification document that is or appears to be—

**(i)** an identification document or authentication feature issued by or under the authority of the United States; or

**(ii)** a birth certificate, or a driver's license or personal identification card;

**(B)** the production or transfer of more than five identification documents, authentication features, or false identification documents;

**(C)** an offense under paragraph (5) of such subsection; or

**(D)** an offense under paragraph (7) of such subsection that involves the transfer, possession, or use of 1 or more means of identification if, as a result of the offense, any individual committing the offense obtains anything of value aggregating $1,000 or more during any 1-year period;

**(2)** except as provided in paragraphs (3) and (4), a fine under this title or imprisonment for not more than 5 years, or both, if the offense is—

**(A)** any other production, transfer, or use of a means of identification, an identification document,,, [1] authentication feature, or a false identification document; or

**(B)** an offense under paragraph (3) or (7) of such subsection;

**(3)** a fine under this title or imprisonment for not more than 20 years, or both, if the offense is committed—

**(A)** to facilitate a drug trafficking crime (as defined in section 929 (a)(2));

**(B)** in connection with a crime of violence (as defined in section 924 (c)(3)); or

**(C)** after a prior conviction under this section becomes final;

**(4)** a fine under this title or imprisonment for not more than 30 years, or both, if the offense is committed to facilitate an act of domestic terrorism (as defined under section 2331 (5) of this title) or an act of international terrorism (as defined in section 2331 (1) of this title);

**(5)** in the case of any offense under subsection (a), forfeiture to the United States of any personal property used or intended to be used to commit the offense; and

**(6)** a fine under this title or imprisonment for not more than one year, or both, in any other case.

**(c)** The circumstance referred to in subsection (a) of this section is that—

**(1)** the identification document, authentication feature, or false identification document

**ADD -8-**

is or appears to be issued by or under the authority of the United States or a sponsoring entity of an event designated as a special event of national significance or the document-making implement is designed or suited for making such an identification document, authentication feature, or false identification document;

**(2)** the offense is an offense under subsection (a)(4) of this section; or

**(3)** either—

**(A)** the production, transfer, possession, or use prohibited by this section is in or affects interstate or foreign commerce, including the transfer of a document by electronic means; or

**(B)** the means of identification, identification document, false identification document, or document-making implement is transported in the mail in the course of the production, transfer, possession, or use prohibited by this section.

**(d)** In this section and section 1028A—

**(1)** the term "authentication feature" means any hologram, watermark, certification, symbol, code, image, sequence of numbers or letters, or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified;

**(2)** the term "document-making implement" means any implement, impression, template, computer file, computer disc, electronic device, or computer hardware or software, that is specifically configured or primarily used for making an identification document, a false identification document, or another document-making implement;

**(3)** the term "identification document" means a document made or issued by or under the authority of the United States Government, a State, political subdivision of a State, a sponsoring entity of an event designated as a special event of national significance, a foreign government, political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals;

**(4)** the term "false identification document" means a document of a type intended or commonly accepted for the purposes of identification of individuals that—

**(A)** is not issued by or under the authority of a governmental entity or was issued under the authority of a governmental entity but was subsequently altered for purposes of deceit; and

**(B)** appears to be issued by or under the authority of the United States Government, a State, a political subdivision of a State, a sponsoring entity of an event designated by the President as a special event of national significance, a foreign government, a political subdivision of a foreign government, or an international governmental or

**ADD -9-**

quasi-governmental organization;

**(5)** the term "false authentication feature" means an authentication feature that—

**(A)** is genuine in origin, but, without the authorization of the issuing authority, has been tampered with or altered for purposes of deceit;

**(B)** is genuine, but has been distributed, or is intended for distribution, without the authorization of the issuing authority and not in connection with a lawfully made identification document, document-making implement, or means of identification to which such authentication feature is intended to be affixed or embedded by the respective issuing authority; or

**(C)** appears to be genuine, but is not;

**(6)** the term "issuing authority"—

**(A)** means any governmental entity or agency that is authorized to issue identification documents, means of identification, or authentication features; and

**(B)** includes the United States Government, a State, a political subdivision of a State, a sponsoring entity of an event designated by the President as a special event of national significance, a foreign government, a political subdivision of a foreign government, or an international government or quasi-governmental organization;

**(7)** the term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—

**(A)** name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;

**(B)** unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

**(C)** unique electronic identification number, address, or routing code; or

**(D)** telecommunication identifying information or access device (as defined in section 1029 (e));

**(8)** the term "personal identification card" means an identification document issued by a State or local government solely for the purpose of identification;

**(9)** the term "produce" includes alter, authenticate, or assemble;

**(10)** the term "transfer" includes selecting an identification document, false identification document, or document-making implement and placing or directing the placement of such identification document, false identification document, or document-making implement on an online location where it is available to others;

**ADD -10-**

Case: 14-1008    Document: 00116761074    Page: 50    Date Filed: 11/06/2014    Entry ID: 5865139

**(11)** the term "State" includes any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any other commonwealth, possession, or territory of the United States; and

**(12)** the term "traffic" means—

**(A)** to transport, transfer, or otherwise dispose of, to another, as consideration for anything of value; or

**(B)** to make or obtain control of with intent to so transport, transfer, or otherwise dispose of.

**(e)** This section does not prohibit any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a State, or a political subdivision of a State, or of an intelligence agency of the United States, or any activity authorized under chapter 224 of this title.

**(f) Attempt and Conspiracy.—** Any person who attempts or conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**(g) Forfeiture Procedures.—** The forfeiture of property under this section, including any seizure and disposition of the property and any related judicial or administrative proceeding, shall be governed by the provisions of section 413 (other than subsection (d) of that section) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 853).

**(h) Forfeiture; Disposition.—** In the circumstance in which any person is convicted of a violation of subsection (a), the court shall order, in addition to the penalty prescribed, the forfeiture and destruction or other disposition of all illicit authentication features, identification documents, document-making implements, or means of identification.

**(i) Rule of Construction.—** For purpose of subsection (a)(7), a single identification document or false identification document that contains 1 or more means of identification shall be construed to be 1 means of identification.

**ADD -11-**

Case: 14-1868    Document: 00116761074    Page: 51    Date Filed: 11/06/2014    Entry ID: 5865139

Home  Glossary  FAQs

THE 188TH GENERAL COURT OF
THE COMMONWEALTH OF MASSACHUSETTS

*site search*    GO

Options

Massachusetts Laws

Massachusetts Constitution

General Laws

Session Laws

Rules

# General Laws

Print Page

| PART IV | CRIMES, PUNISHMENTS AND PROCEEDINGS IN CRIMINAL CASES | |
| --- | --- | --- |
| | | PREV   NEXT |
| **TITLE I** | **CRIMES AND PUNISHMENTS** | |
| | | NEXT |
| **CHAPTER 266** | **CRIMES AGAINST PROPERTY** | |
| | | PREV   NEXT |
| **Section 37E** | **Use of personal identification of another; identity fraud; penalty; restitution** | |
| | | PREV   NEXT |

Section 37E. (a) For purposes of this section, the following words shall have the following meanings:—

"Harass", willfully and maliciously engage in an act directed at a specific person or persons, which act seriously alarms or annoys such person or persons and would cause a reasonable person to suffer substantial emotional distress.

"Personal identifying information", any name or number that may be used, alone or in conjunction with any other information, to assume the identity of an individual, including any name, address, telephone number, driver's license number, social security number, place of employment, employee identification number, mother's maiden name, demand deposit account number, savings account number, credit card number or computer password identification.

"Pose", to falsely represent oneself, directly or indirectly, as another person or persons.

"Victim", any person who has suffered financial loss or any entity that provided money, credit, goods, services or anything of value and has suffered financial loss as a direct result of the commission or attempted commission of a violation of this section.

(b) Whoever, with intent to defraud, poses as another person without the express authorization of that person and uses such person's personal identifying information to obtain or to attempt to obtain money, credit, goods, services, anything of value, any identification card or other evidence of such person's identity, or to harass another shall be guilty of identity fraud and shall be punished by a fine of not more than $5,000 or imprisonment in a house of correction for not more than two and one-half years, or by both such fine and imprisonment.

(c) Whoever, with intent to defraud, obtains personal identifying information about another person without the express authorization of such person, with the intent to pose as such

Case: 14-1868     Document: 00116761074     Page: 52     Date Filed: 11/06/2014     Entry ID: 5865139

person or who obtains personal identifying information about a person without the express authorization of such person in order to assist another to pose as such person in order to obtain money, credit, goods, services, anything of value, any identification card or other evidence of such person's identity, or to harass another shall be guilty of the crime of identity fraud and shall be punished by a fine of not more than $5,000 or imprisonment in a house of correction for not more than two and one-half years, or by both such fine and imprisonment.

(d) A person found guilty of violating any provisions of this section shall, in addition to any other punishment, be ordered to make restitution for financial loss sustained by a victim as a result of such violation. Financial loss may include any costs incurred by such victim in correcting the credit history of such victim or any costs incurred in connection with any civil or administrative proceeding to satisfy any debt or other obligation of such victim, including lost wages and attorney's fees.

(e) A law enforcement officer may arrest without warrant any person he has probable cause to believe has committed the offense of identity fraud as defined in this section.

(f) A law enforcement officer shall accept a police incident report from a victim and shall provide a copy to such victim, if requested, within 24 hours. Such police incident reports may be filed in any county where a victim resides, or in any county where the owner or license holder of personal information stores or maintains said personal information, the owner's or license holder's principal place of business or any county in which the breach of security occurred, in whole or in part.

Show / Hide Site Map

**ADD -13-**



| Massachusetts Laws | Bills | State Budget | People | Committees | Educate & Engage | Events | MyLegislature |

Home  Bills & Laws  Laws  General Laws  PART IV  TITLE I  CHAPTER 267  Section 1

Massachusetts Laws

Massachusetts Constitution

General Laws

Session Laws

Rules

# General Laws

Print Page

| PART IV | CRIMES, PUNISHMENTS AND PROCEEDINGS IN CRIMINAL CASES |
| --- | --- |
| | PREV   NEXT |

| TITLE I | CRIMES AND PUNISHMENTS |
| --- | --- |
| | NEXT |

| CHAPTER 267 | FORGERY AND CRIMES AGAINST THE CURRENCY |
| --- | --- |
| | PREV   NEXT |

| Section 1 | False or forged records, certificates, returns, attestations and other writings |
| --- | --- |
| | NEXT |

Section 1. Whoever, with intent to injure or defraud, falsely makes, alters, forges or counterfeits a public record, or a certificate, return or attestation of a clerk or register of a court, public register, notary public, justice of the peace, town clerk or any other public officer, in relation to a matter wherein such certificate, return or attestation may be received as legal proof; or a charter, deed, will, testament, bond or writing obligatory, power of attorney, policy of insurance, bill of lading, bill of exchange or promissory note; or an order, acquittance or discharge for money or other property or a credit card or an instrument described as a United States Dollar Traveller's Check or Cheque, purchased from a bank or other financially responsible institution, the purpose of which is a source of ready money on cashing the instrument without identification other than the signature of the purchaser; or an acceptance of a bill of exchange, or an endorsement or assignment of a bill of exchange or promissory note for the payment of money; or an accountable receipt for money, goods or other property; or a stock certificate, or any evidence or muniment of title to property; or a certificate of title, duplicate certificate of title, certificate issued in place of a duplicate certificate, the registration book, entry book, or any indexes provided for by chapter one hundred and eighty-five, or the docket of the recorder; shall be punished by imprisonment in the state prison for not more than ten years or in jail for not more than two years.

Show / Hide Site Map

**ADD -14-**