No. 14-1868

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

**UNITED STATES,**
Appellee,

v.

**Richard Schwartz,**
Appellant.

**REPLY BRIEF OF APPELLANT**

Appeal From The United States District Court
For The District Of Massachusetts
In Criminal Action No. 08-10352

Roberto M. Braceras (No. 68294)
Abigail K. Hemani (No.96206)
Christine Dieter (No. 1165713)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
(617) 570-1000
(617) 523-1231 (Facsimile)

Attorneys for Appellant

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................2

I.   THE GOVERNMENT FAILED TO PROVE THAT MR. SCHWARTZ VIOLATED MASS. GEN. LAWS CH. 90, § 24B. .................2

     A.   Mass. Gen. Laws Ch. 90, § 24B Requires Culpable Intent...................3

     B.   The Government Failed to Prove by a Preponderance of Sufficiently Reliable Evidence that the Wisconsin Driver's License Was Falsely Made..................................................................5

II.  THE GOVERNMENT FAILED TO PROVE THAT MR. SCHWARTZ ANSWERED THE PROBATION DEPARTMENT UNTRUTHFULLY. ................................................................................9

CONCLUSION ...................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. City of Bos.*,
461 Mass. 602, 963 N.E.2d 694 (2012) .......... 4

*Commonwealth v. Apalakis*,
396 Mass. 292, 486 N.E.2d 669 (1985) .......... 6, 7, 8

*Commonwealth v. Kraatz*,
2 Mass. App. Ct. 196, 310 N.E.2d 368 (1974) .......... 4

*Commonwealth v. Stevens*,
81 Mass. App. Ct. 1117, 962 N.E.2d 245 (2012) (unpublished) .......... 3, 5

*Marteney v. United States*,
216 F.2d 760 (10th Cir. 1954) .......... 6, 7

*United States v. Bradstreet*,
207 F.3d 76 (1st Cir. 2000) .......... 7

*United States v. Portalla*,
985 F.2d 621 (1st Cir. 1993) .......... 12

*United States v. Rondeau*,
430 F.3d 44 (1st Cir. 2005) .......... 12

**STATUTES**

Mass. Gen. Laws Ch. 90, § 24B .......... passim

**OTHER AUTHORITIES**

Black's Law Dictionary (rev. 4th ed.) .......... 4

2A N.J. Singer & J.D. Shambie Singer, Statutes & Statutory Const. (7th ed. 2007) .......... 4

## **INTRODUCTION**

In its brief, the government concedes that whether Mr. Schwartz committed a crime in violation of his conditions of supervised release turns on the meaning and scope of one subparagraph of Mass. Gen. Laws ch. 90, § 24B—a paragraph that makes it unlawful to "ha[ve] in [one's] possession, or utter[], publish[] as true, or in any way make[] use of a falsely made . . . license." The government argues, in essence, that this provision creates a strict liability crime, requiring no proof of wrongful intent—by either the person who made the license or the person who possessed it. Indeed, under the government's construction of the statute, accepting an inaccurate driver's license from the RMV—regardless of the reason for the inaccuracy—would be criminal. This argument not only defies common sense, it also misconstrues the plain language of the statute and related case law. And because the government did not adduce any evidence of wrongful intent—either by Mr. Schwartz or by whomever made the Wisconsin license at issue—this Court should reverse the District Court's holding that Mr. Schwartz violated this condition of his supervised release.

Additionally, this Court should reverse the district court's holding that Mr. Schwartz violated the condition of release requiring that he respond truthfully to inquiries by the probation office. Although the government attempts to obscure the precise nature of the various questions that Mr. Schwartz was asked by the

1

probation officers—and his answers to those questions—in fact, there is no evidence to support a finding that Mr. Schwartz ever lied to any probation officer in response to any of the questions posed.  Instead, the only relevant evidence—Mr. Schwartz's own statements—plausibly suggests that Mr. Schwartz did not, in fact, know Mr. John Slack, and that Mr. Schwartz did not, in fact, know whether the Wisconsin license was in his wallet on the relevant date and time.   Because the government has adduced no evidence to disprove the veracity of Mr. Schwartz's statements, the district court erred in holding that Mr. Schwartz violated this condition of his release as well.

For these reasons, and the additional reasons discussed below, the judgment of violation against Mr. Schwartz should be vacated.

## ARGUMENT

### I. THE GOVERNMENT FAILED TO PROVE THAT MR. SCHWARTZ VIOLATED MASS. GEN. LAWS CH. 90, § 24B.

The government concedes that, because it adduced no evidence of any intent to defraud, it also failed to establish that Mr. Schwartz violated two of the three statutes that it cited during Mr. Schwartz's probation hearing. *See* Appellee Br. at 6, 12-17.  According to the government, however, the evidence was sufficient to establish a violation of the first subparagraph of Mass. Gen. Laws Chapter 90, § 24B, because that particular provision requires no culpable intent—no intent to defraud, and no evidence that the license at issue was forged, counterfeit, or

2

otherwise "falsely made." *See* Appellee Br. at 15, 19-20. The government is wrong.

### A.    Mass. Gen. Laws Ch. 90, § 24B Requires Culpable Intent.

In *Commonwealth v. Stevens*, 81 Mass. App. Ct. 1117, 962 N.E.2d 245 (2012) (unpublished), the Massachusetts Appeals Court made clear that proof of culpable intent is required in order to establish a violation of Mass. Gen. Laws Chapter 90, § 24B. The government attempts to distinguish *Stevens* by suggesting that its holding is limited to a separate subsection of § 24B—subparagraph three—and not to the section of that statute arguably relevant here—subparagraph one. But, on its face, the decision in *Stevens* is not so limited.  Nor would there be any grounds for such a limitation: subparagraphs one and three are two sides of the same coin, with no material distinctions between them.

Subparagraph one, the provision arguably relevant here, applies to:

> [W]hoever has in his possession, or utters, publishes as true, or in any way makes use of a falsely made . . . license.

Mass. Gen. Laws Chapter 90, § 24B. And subparagraph three, which the government contends was at issue in *Stevens*, applies to:

> [W]hoever has in his possession, or utters, publishes as true, or in any way makes use of a license . . . obtained [by falsely impersonat[ing] the person named in an application].

3

*Id*. Both provisions make it unlawful to possess a "fake ID." The only difference is that one prohibits possession of a license that was "falsely made," whereas the other prohibits possession of a license that was obtained by "falsely impersonat[ing]" someone else.

The government concedes, as it must under *Stevens*, that the language "falsely impersonates" in subparagraph three imposes a scienter requirement. *See* Appellee Br. at 13-14. Indeed, it repeatedly suggests that the use of the word "falsely" in this provision connotes an intent to defraud. *Id*. at 14.[1] But the government fails to acknowledge that, by the same token, the language "falsely made" in subparagraph one also connotes an element of wrongful intent. As the Supreme Judicial Court has made clear, "[t]he same words used twice in the same act are presumed to have the same meaning." *See Adams v. City of Bos.*, 461 Mass. 602, 614, 963 N.E.2d 694 (2012) (citing 2A N.J. Singer & J.D. Shambie Singer, Statutes & Statutory Const. § 46:6, at 249 (7th ed. 2007)). And the word "falsely" not only appears in both subparagraph one and subparagraph three—it appears in almost precisely the same context in both provisions.

---

[1] *Stevens* is not the only case holding that the word "falsely" or "false" requires proof of an intent to defraud or deceive. As Mr. Schwartz explained in his opening brief, Massachusetts courts have uniformly interpreted "false" to mean "something designedly untrue and deceitful," implying "an intention to perpetrate some treachery or fraud." *Commonwealth v. Kraatz*, 2 Mass. App. Ct. 196, 202, 310 N.E.2d 368 (1974) (quoting Black's Law Dictionary 722 (rev. 4th ed.)); *see* Appellant's Br. at 23-24.

4

In short, because subparagraphs one and three of Chapter 90, § 24B use the same language and target the same offense of possessing a false license (albeit a license "falsely" created in a slightly different manner), under *Stevens*, both subparagraphs necessarily incorporate the same intent requirement. Or, as the Appeals Court concluded in *Stevens*, neither allows for conviction based "simply" on a finding that one "possessed a driver's license that was not genuine," without some additional showing of culpable intent. *Id.* at *3. And because the government never even attempted to prove that Mr. Schwartz acted with intent to defraud— either in making or possessing the Wisconsin license—it failed to establish that Mr. Schwartz violated Chapter 90, § 24B.

### B. The Government Failed to Prove by a Preponderance of Sufficiently Reliable Evidence that the Wisconsin Driver's License Was Falsely Made.

In Section I.B.2 of its brief, the government acknowledges that a "falsely made" or "counterfeit" license is one "made in fraudulent imitation: produced with intent to deceive." Appellee's Br. at 17 (quoting *Commonwealth v. Pierre*, 71 Mass. App. Ct. 58, 60 n.6, 879 N.E.2d 131, 134 n.6 (2008) (quoting *Webster's Third New Int'l Dictionary*, 519 (2002))). But it then denies any obligation to establish the source of the Wisconsin license or the purpose for which it was made. Appellee's Br. at 20. This position is nonsensical: If there is no evidence of how or why the license was made, then there is no evidence of whether it was

5

"produced with an intent to deceive." Appellee's Br. at 17 (quoting *Pierre*, 71 Mass. App. Ct. at 60 n.6, 879 N.E.2d 131).

Later in its brief, the government backs away from its argument that a "falsely made" document is one made "with intent to deceive." *Id*. For example, the government attempts to distinguish *Commonwealth v. Apalakis*, 396 Mass. 292, 486 N.E.2d 669 (1985), a case in which the Supreme Judicial Court squarely held that the description of a document as "falsely made" refers "to the genuineness of execution and not falsity of content." *Id*. at 299 (quoting *Marteney v. United States*, 216 F.2d 760, 763 (10th Cir. 1954)). The government argues that "Schwartz's reliance on *Commonwealth v. Apalakis*, 396 Mass. 292, 486 N.E.2d 669 (1985), [] is misplaced" because the "*actus reus*" for a violation of Chapter 90, § 24B is the "possession" of a falsely made license, whereas "the *actus reus* for the crime at issue in that case [was] the false making, altering, forging, or counterfeiting of a public record." Appellee's Br. at 20 (citing Mass. Gen. Laws ch. 267, §1). But, again, the government misses the point: Irrespective of what the *actus reus* for each crime might be, both crimes require proof that the document at issue was falsely made. And Massachusetts law is quite clear on what it means for a document to be "falsely made": As explained in *Apalakis*, those "words relate to

the genuineness of execution and not falsity of content." *Apalakis*, 396 Mass. at 299, 486 N.E.2d 669 (quoting *Marteney*, 216 F.2d at 763).[2]

In its brief, the government cites evidence that the Wisconsin license contains "false content." *Id*. For example, the government points to the District Court's finding that, although the Wisconsin license had the same license number as Mr. Slack's actual license, the picture and descriptive information concerning height, weight, and hair color were not accurate. *See* Appellee's Br. at 18.  But the government does not and could not point to evidence demonstrating that the Wisconsin license was "falsely made"—that it was created to serve as a counterfeit identification, rather than "genuine[ly] [] execut[ed]" as a sample or a memento.  *Apalakis*, 396 Mass. at 299, 486 N.E.2d.

Indeed, the only evidence that the government points to is the Wisconsin license itself, which the government seems to suggest provides circumstantial evidence of fraudulent intent.  Appellee's Br. at 18.  In an ordinary case, the government might be right.  But this is not an ordinary case; it is a case in which the U.S. Probation Office has known for years that Mr. Schwartz worked with

---

[2] In his opening brief, Mr. Schwartz noted in a footnote that the alternative definition of "falsely made" cited by the District Court was not consistent with Massachusetts law.  In its brief, the government does not disagree but instead asserts that Mr. Schwartz has waived this argument because it was raised only in a footnote.  But, of course, this is not a stand-alone argument; it is part and parcel of the broader argument made throughout Mr. Schwartz's brief and, as such, this Court can and should consider it. *See United States v. Bradstreet*, 207 F.3d 76, 80 (1st Cir. 2000) ("Whatever significance [the footnote] might

7

technology used to create and test driver's licenses, and that he had performed such work for the State of Wisconsin. Appellant's Br. 13, 26. And a sample Wisconsin license created in order to test the technology systems used by the Wisconsin Department of Motor Vehicles would not violate Chapter 90 § 24B. Because although such a license may contain "fals[e] [] content," it is also entirely "genuine[] [in its] execution." *Apalakis*, 396 Mass. at 299.

The government argues that the Wisconsin license could not have been a sample or memento because—unlike the sample and memento licenses introduced into evidence by Mr. Schwartz—there was nothing on the license itself that would identify it as such. Appellee's Br. at 18. But the government mischaracterizes the record evidence. The only evidence introduced by the government on this point was (1) a fax of a poorly-made photocopy of the *front side* of the license that is smudged and illegible in key places (*i.e.*, places where some of the other sample licenses introduced into evidence self-identified as samples), *see* JA208; Appellant's Br. at 27; and (2) one witness who saw the original Wisconsin license but could not remember whether she even looked at the back of the license to determine whether, like some of the other sample licenses introduced into evidence, it declared itself to be a sample. *See* Appellant's Br. at 12, 27. Because it is entirely possible that there was information on the *back* of the Wisconsin license

---

have had standing alone, a broader look at what the government actually

indicating that it was a "sample"—just as such information appeared on the back of other sample licenses introduced into evidence by Mr. Schwartz—the government failed to establish that the license was, in fact, "falsely made." And because the statute relied upon by the government, Mass. Gen. Laws Ch. 90, § 24B, only criminalizes possession of a license that was "falsely made," the government failed to prove that Mr. Schwartz violated the condition of his probation prohibiting him from committing another crime.

## II. THE GOVERNMENT FAILED TO PROVE THAT MR. SCHWARTZ ANSWERED THE PROBATION DEPARTMENT UNTRUTHFULLY.

The government argues that it presented sufficient evidence to establish that Mr. Schwartz lied to his probation officer, Erin Hennemann, about the Wisconsin license "when he denied knowing of Slack or the license's existence." Appellee's Br. at 21. But, in making this argument, the government conflates and misconstrues the various questions asked by Officer Hennemann—and the various answers given by Mr. Schwartz.

First, Officer Hennemann testified that she asked Mr. Schwartz whether he "he knew of a John Slack" or had any knowledge of "a person by the name of John Slack," and that he said he did not. JA123-24; JA151. Although the government contends that Mr. Schwartz's response was untruthful, there is no evidence in the record that Mr. Schwartz ever met Mr. Slack (prior to his death in 2012) or that

---

argued in its brief and at oral argument rebuts any appearance of waiver.").

9

Mr. Schwartz even knew who Mr. Slack was. To the contrary, the only evidence on this point is (1) Officer Hennemann's testimony that Mr. Schwartz told her he did not know John Slack, and (2) Officer Hennemann's testimony that she "*d[id] not have knowledge that Mr. Schwartz knew who Mr. Slack was.*" JA143. That Mr. Schwartz may have had a license with Mr. Slack's name on it in his wallet does not prove that he knew Mr. Slack, or that he even knew *of* Mr. Slack. There is simply no evidence to suggest that Mr. Schwartz lied when he told Officer Hennemann that he did not know "a person by the name of John Slack." JA123-24.

Second, Officer Hennemann testified that she asked Mr. Schwartz whether "he was in possession of a John Slack ID" several weeks earlier, on March 27, 2014, when he appeared at Probate Court to serve his contempt citation. JA 151; Appellant's Br. at 15-17. In response to this question, Mr. Schwartz stated that he did not have an ID in the name of John Slack, but he subsequently clarified that such a document "could have been in his wallet; he wasn't sure," and that "he did not know the contents of his wallet at any given time." JA151. In other words, Mr. Schwartz did not affirmatively represent to his probation officer that he did not have a license or identification card in the name of John Slack when he appeared in Probate Court—as the government suggests—but only that he did not *know* whether he had such a document in his possession at that time. This could mean any number of things: Perhaps Mr. Schwartz knew he had a sample Wisconsin

10

license in his wallet, but he did not recall the name on the license; perhaps Mr. Schwartz knew he had a sample license in the name of John Slack, but he did not recall whether he had that sample license with him in Probate Court several weeks earlier; or perhaps Mr. Schwartz knew he had a sample license but he did not know the name on that license or whether he had it in his wallet when he appeared in Probate Court. Each of these possibilities is plausible, and each would suggest that Mr. Schwartz's response to Officer Hennemann's question was entirely accurate.

Given the lack of any direct evidence that Mr. Schwartz lied to his probation officer, the government argues that Mr. Schwartz *must have been* lying because, following this questioning by Officer Hennemann, he "was desperate and begged" her not to file a violation notice. *See* Appellee's Br. at 22; JA125-26. But Mr. Schwartz's desperation to avoid a violation notice says nothing about whether he answered Officer Hennemann's questions truthfully. Mr. Schwartz was one week away from concluding three years of probation. Anyone in that situation would do whatever they could to avoid a violation notice, irrespective of whether that notice was justified.

Finally, the government implicitly suggests that Mr. Schwartz's statements—that he did not know John Slack, and that he did not know whether he had the Wisconsin license in his wallet when he appeared in Probate Court— should be given no evidentiary weight because they are hearsay. Appellee's Br. at

11

21-22. But, as the government is well aware, the Federal Rules of Evidence do not apply at revocation proceedings. *United States v. Portalla*, 985 F.2d 621, 622 (1st Cir. 1993). Accordingly, the court was entitled to accept these statements into evidence and consider them not just for the fact that they were said, but also for the truth of the matter asserted. *See United States v. Rondeau*, 430 F.3d 44, 48 (1st Cir. 2005). And because the government offered no evidence to rebut the veracity of Mr. Schwartz's representations, it failed to establish that Mr. Schwartz violated his conditions of release by lying to the Probation Office.

## **CONCLUSION**

For all the reasons outlined in Mr. Schwartz's opening brief and in this reply, Mr. Schwartz respectfully requests that this Court reverse the District Court's holding and vacate its judgment.

    Respectfully submitted,

    RICHARD SCHWARTZ

    By his attorneys,

    /s/ *Abigail K. Hemani*
    Roberto M. Braceras (No. 68294)
    Abigail K. Hemani (No. 96206)
    Christine Dieter (No. 1165713)
    GOODWIN PROCTER LLP
    Exchange Place
    Boston, MA 02109

                                                                    Tel.: (617) 570-1000  
                                                                    Fax: (617) 523-1231  
                                                  rbraceras@goodwinprocter.com  
                                                   ahemani@goodwinprocter.com  
                                                     cdieter@goodwinprocter.com

Dated: January 5, 2015

## **CERTIFICATE OF SERVICE**

      I, Abigail K. Hemani, hereby certify that on the 5th day of January 2015, I electronically filed the foregoing Appellants' Reply Brief with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served a true copy of the Appellant's Reply Brief by the CM/ECF system:

| | |
|---|---|
| Dina Michael Chaitowitz, Esq. | Eugenia Carris, Esq. |
| U.S. Attorney's Office | U.S. Attorney's Office |
| John Joseph Moakley Courthouse | John Joseph Moakley Courthouse |
| 1 Courthouse Way | 1 Courthouse Way |
| Boston, MA 02210 | Boston, MA 02210 |

      /s/ *Abigail K. Hemani*
      Abigail K. Hemani

Dated: January 5, 2015